Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2723 | DATE | 8/19/2003 |
| CASE TITLE | Jesus Martinez vs. The Burlington Northern and Santa Fe Railway Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/24/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Enter memorandum opinion and order on plaintiff's motion for partial summary judgment as to the issue of liability. Plaintiff's motion for partial summary judgment as to the issue of liability is hereby granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 20 2003 date docketed | 35 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 8/19/2003 date mailed notice | |
| | SM | courtroom deputy's initials | 03 AUG 19 PM 4:26 FILED FOR DOCKETING Date/time received in central Clerk's Office | SM mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESUS MARTINEZ,

    Plaintiff,

v.

THE BURLINGTON NORTHERN and
SANTA FE RAILWAY COMPANY,
a Corporation,

    Defendant.

Case No. 00 C 2723

Magistrate Judge Ian H. Levin

## MEMORANDUM OPINION AND ORDER

Plaintiff Jesus Martinez (hereinafter "Plaintiff") brings a one count Second Amended Complaint against Defendant Burlington Northern and Santa Fe Railway Company (hereinafter "Defendant") under the Federal Employers' Liability Act (hereinafter "FELA"), 45 U.S.C. § 51 *et seq.*, seeking damages for personal injuries sustained while employed by Defendant. Pending before the Court is Plaintiff's motion for partial summary judgment as to the issue of liability in the cause. For the reasons hereinafter set forth, the Court grants Plaintiff's motion.

## BACKGROUND FACTS

Plaintiff was employed by Defendant as a section foreman from August of 1979 through May of 2000. (Pl.'s LR56.1(a)(3) St. ¶ 1; Martinez Dep. at 19-21.) As a section foreman, Plaintiff was responsible for maintaining, repairing and building railroad tracks. (*Id.* ¶ 1.)

On the morning of May 4, 2000, Plaintiff reported to work at Defendant's Corwith railroad yard. (Pl.'s LR56.1(a)(3) St. ¶ 2.) Plaintiff's work assignment that day entailed lubricating,

maintaining, and inspecting railroad tracks and switches. (Martinez Dep. at 33, 40-41.) Espiridion Soto (hereinafter "Soto"), a roadway worker, was assigned to Plaintiff's switch maintenance crew that morning. (Pl.'s LR56.1(a)(3) St. ¶ 5.) Plaintiff and Soto were the sole crew members assigned to clean, oil and maintain the switches for Corwith Yard on May 4, 2000. (*Id.*)

Plaintiff conducted a job briefing with Soto at the storehouse in Corwith Yard before they started cleaning switches on May 4, 2000. (Def.'s LR56.1(b)(3)(B) St. ¶ 28.) During this job briefing, Plaintiff assigned Soto to serve as his lookout while he [Plaintiff] was brooming and inspecting switches. (*Id.*) After the job briefing, Plaintiff and Soto went to the south end of the railroad yard to begin their work at switch number 235. (Pl.'s LR56.1(a)(3) St. ¶ 6; Martinez Dep. at 48-49.)

At switch number 235, Plaintiff worked in between the rails inspecting for nail blocks and any loose bolts or objects that could have been stuck in between the track's points. (Pl.'s LR56.1(a)(3) St. ¶ 10.) This required Plaintiff to work between the rails, sweeping and inspecting the switch. (*Id.*) As Plaintiff was sweeping and cleaning switch number 235, Plaintiff looked up at Soto and saw that Soto was looking at him [Plaintiff] and not watching for oncoming trains. (*Id.* ¶ 11; Pl.'s Resp. to Def.'s LR56.1(b)(3)(B) St. ¶ 33.) Plaintiff was subsequently struck by the drawbar of a silently approaching lead railroad car which knocked him down between the rails and ran over his right foot severely crushing it and permanently injuring him. (Pl.'s LR56.1(a)(3) St. ¶ 12; Pl.'s Ex. B.) Plaintiff also suffered a head laceration as a result of the accident. (Pl.'s Ex. B.)

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

2

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, 91 L.Ed.2d 202, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. Therefore, if the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348, 89 L.Ed.2d 569 (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## ISSUE(S)

Plaintiff argues that there is no genuine issue of material fact(s) with respect to the issue of Defendant's liability herein. The basis of Plaintiff's argument is that Defendant breached its duty to Plaintiff when it violated Federal Railroad Administration (hereinafter "FRA") safety regulations and this breach of duty indisputably caused Plaintiff's injury, certainly in part. Plaintiff, therefore, asserts that causation has been established as a matter of law and that a trial only on the issue of damages is warranted. Defendant, on the other hand, contends that Plaintiff's partial summary judgment motion should be denied, as a jury question exists as to whether Plaintiff's negligence was the sole cause of the subject accident.

## DISCUSSION

Under the FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. The intent of the FELA is to provide broad remedial measures for railroad employees. *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 831 (7th Cir. 1994). However, the FELA, is not a workmen's compensation act; causation must still be proved. *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992). In a FELA action, the railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Therefore, under the FELA, "a railroad employee may recover . . . when his employer's negligence played a role, no matter how slight, in producing the employee's injury." *Traylor v. Metro-North Commuter R.R.*, No. 01 CIV. 1237, 2002 WL 31319923, at *2 (S.D. N.Y. Oct. 16, 2002).

4

In an action brought under the FELA, "the violation of a statute or regulation . . . automatically constitutes breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury."[1] *Walden*, 975 F.2d at 364. Thus, the railroad is liable for any injury to an employee "resulting in whole or in part" from the railroad's negligence. 45 U.S.C. § 51. Where a defendant is found liable under the FELA for violation of a federal railroad safety regulation, the plaintiff's damages will not be reduced because of his own negligence. 45 U.S.C. § 53; *Eckert v. Aliquippa & Southern R.R. Co.*, 828 F.2d 183, 187 (3d Cir. 1987) (violation of regulation promulgated pursuant to Federal Railroad Safety Act precluded use of contributory negligence). However, "[p]roof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or part to the injury." *Walden*, 975 F.2d at 364.

## I. DEFENDANT BREACHED ITS DUTY TO PLAINTIFF UNDER THE FELA.

Plaintiff argues that Defendant breached its duty under the FELA when it violated FRA regulations pertaining to roadway worker safety. (Pl.'s Mem. at 7.) In support of its contention, Plaintiff specifically relies on the deposition testimony of Kevin Wilde (hereinafter "Wilde"), Defendant's Director of Rules and Field Support (and expert witness),[2] which Plaintiff alleges establishes that Defendant violated two FRA safety regulations on the day of the accident. (*Id.* at

---

[1] Under the FELA, there is negligence *per se* if a statutory violation "contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 433, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

[2] Wilde is Defendant's Rule 26(a) expert witness and has extensive experience dealing with the application, interpretation and revision of railroad operating rules and safety regulations for all of the major crafts that work for Defendant. (Def.'s LR56.1(b)(3)(B) St. ¶ 42; Wilde Dep. at 6-8.) Fed.R.Civ.P.26(a).

5

7-10.) Defendant, on the other hand, does not seek to refute Wilde's deposition testimony that it violated FRA safety regulations. Instead, Defendant asserts that Wilde concluded that Plaintiff also violated an FRA safety regulation, and, therefore, Plaintiff was the cause of the railroad accident. (Def.'s Mem. at 4; Def.'s Resp. to Pl.'s LR56.1(a)(3) St. ¶¶ 17, 18; Def.'s LR56.1(b)(3)(B) ¶ 46; Martinez Dep. at 77.)

The Court finds as a threshold matter that the record establishes, and Defendant does not dispute, that Defendant's violation of two FRA safety regulations constitutes a breach of Defendant's duty and negligence *per se* on the part of Defendant. *See e.g., Walden*, 975 F.2d at 364. This finding is based on the defense expert, Mr. Wilde's, own deposition testimony. Wilde's deposition testimony establishes, that on the day of the accident, Defendant through its employee and agent, Soto, violated two FRA safety regulations by (1) allowing Plaintiff to foul[3] a railroad track without providing on-track safety in violation of 49 C.F.R. § 214.335(a)[4] and (2) permitting Soto to serve as a lookout when he was not properly trained to do so (and which obligated Soto to (a) decline the subject lookout assignment and, to the best of his ability, (b) stop any other employees from working on the rails until proper on-track safety protection was provided) in violation of 49 C.F.R. § 214.343(a).[5]

---

[3]In the railroad industry, a roadway worker who is working between the rails is referred to as being in "foul" of the track. (Pl.'s Mem. at 5.)

[4]49 C.F.R. § 214.335(a) provides that: "No employer subject to the provisions of this part shall require or permit a roadway worker who is a member of a roadway work group to foul a track unless on-track safety is provided by either working limits, train approach warning, or definite train location in accordance with the applicable provisions of §§ 214.319, 214.321, 213.323, 214.325, 214.327, 214.329 and 214.331 of this part."

[5]49 C.F.R. § 214.343(a) provides that: "No employer shall assign an employee to perform the duties of a roadway worker, and no employee shall accept such assignment, unless that employee has received training in the on-track safety procedures associated with the assignment
(continued...)

(Wilde Dep. at 58, 61, 71-73.) In addition, the Court notes that other evidence in the record, namely Defendant's own report (i.e., Listing of Casualties to Type "A" Reportable Accidents) of the May 4, 2000 railroad accident, further establishes Defendant's breach of duty and negligence *per se*, because the report, under the section entitled "root cause," states the root cause of the subject occurrence was that "Mr. Soto was assigned as a lookout but was not qualified." (Pl.'s Ex. B.)

## II. DEFENDANT'S VIOLATION OF FRA REGULATIONS CONTRIBUTED IN FACT TO PLAINTIFF'S INJURY.

Defendant's contention herein, in opposition to Plaintiff's partial summary judgment motion, is that a jury question exists as to whether Plaintiff's own negligence was the sole cause of the May 4, 2000 accident. The underlying premise for this contention, based on its expert Wilde's testimony, is that Plaintiff violated FRA regulations when he failed to follow on-track safety rules of the railroad and ensure that on-track safety was being provided before he fouled the track. *See* 49 C.F.R. § 214.313(a); 214.313(c).[6] (Def.'s Mem. at 6.) Defendant thus asserts that Plaintiff, who as section foreman was responsible for his crew, knew that Soto was not qualified to serve as a lookout; therefore, Plaintiff placed himself in peril by assigning Soto this responsibility.[7] (*Id.* 6-7.) Defendant further contends that Plaintiff admitted that he knew Soto was not looking out for oncoming trains

---

[5](...continued)
to be performed, and that employee has demonstrated the ability to fulfill the responsibilities for on-track safety that are required of an individual roadway worker performing that assignment."

[6]49 C.F.R. § 214.313(a) provides that: "Each roadway worker is responsible for following the on-track safety rules of the railroad upon which the roadway worker is located." 49 C.F.R. § 214.313 (c) provides that: "Each roadway worker is responsible to ascertain that on-track safety is being provides before fouling a track."

[7]Defendant alleges that Defendant's Roadmaster, Willie Merrill, informed Plaintiff as early as 1999 that Soto was not qualified to serve as a lookout because he lacked the proper qualifications. (Def.'s LR56.1(b)(3)(B) St. ¶ 35.)

7

because he testified that he saw Soto looking at him [Plaintiff] while he was maintaining switch number 235 before the accident occurred. (*Id.* at 7.) Moreover, Defendant claims that Plaintiff had several safety options at his disposal, when he knew that Soto was not looking out for trains, including the ability to take the track out of service, but instead continued to clean and maintain the switch. (*Id.*)

Defendant cites to *Unadilla Valley Ry. Co. v. Caldine*, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224 (1928) and *Southern Ry. Co. v. Youngblood*, 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed.1124 (1932), as support for its defense that Plaintiff caused or was, in fact, the sole cause of the railroad accident. In *Unadilla,* the defendant railroad was not accused of violating any federal safety regulations. There, the deceased, a train conductor, disobeyed a direct, written train order and instructed his motorman to operate a train past a location where they were supposed to wait for an oncoming train to pull into a siding. *Unadilla*, 278 U.S. at 141, 49 S.Ct. 91, 73 L.Ed. 224. The result was a head-on collision that killed the conductor. *Id.* The conductor's estate claimed that the railroad was negligent through the acts of its motorman who should have refused to obey the conductor. *Id.* In these particular circumstances, the Supreme Court found that the plaintiff's decedent (the conductor) was the sole cause of the incident. *Id.* The Court thus ruled that the plaintiff's decedent (the conductor) or one who stood in his shoes "is not entitled as against the Railroad Company that employed him to say that the collision was due to anyone but himself." *Id.* This same sole cause analysis was also applied in *Youngblood.*

The Court, therefore, finds that the *Unadilla* and *Youngblood* cases are distinguishable from the case at bar because it cannot be said herein that Plaintiff was the sole cause of the May 4, 2000 accident. Even assuming *arguendo*, as Defendant asserts, that Plaintiff was negligent in assigning

8

Soto to serve as a lookout when he was not qualified to do so or that he could have taken proactive measures to prevent the accident[8], as discussed *supra*, the record clearly establishes (and Defendant admits) that Defendant negligently violated FRA safety regulations which caused, certainly in part, Plaintiff's injury.[9] Moreover, Defendant's own report that a "root cause" of the accident that injured Plaintiff was the fact that Defendant's employee and agent (Soto) was assigned but not qualified to serve as a lookout. (Pl.'s Ex. B.) Accordingly, the Court finds that no reasonable jury could find that Plaintiff was the sole cause of the May 4, 2000 accident. *See e.g., Burrus v. Norfolk and Western Railway Co.*, 977 S.W.2d 39, 44 (Mo. App.1998)(where the railroad admits negligence by one of plaintiff's co-workers "caused the accident, plaintiff's negligence – if any – could no longer be the one or "sole cause" of the accident."); *Laird v. Illinois Central Gulf R.R. Co.*, 208 Ill.App.3d 51, 66, 566 N.E.2d 944, 153 Ill.Dec. 94 (1991)("While it is true that if the injury results *solely* from the conduct of the plaintiff there can be no recovery, this rule does not apply, even where there is evidence that plaintiff violated a safety regulation, in situations where there is also evidence that defendant was negligent."); *Lovejoy v. Monongahela Connecting R.R. Co.*, 137 F.Supp. 42, 46 (W.D. Pa. 1955)(*citing Grand Trunk Western Ry. Co. v. Lindsay*, 233 U.S. 42, 47, 34 S.Ct. 581, 58 L.Ed. 838 (1914)("It is only when the plaintiff's act is the sole cause – when defendant's act is no part of the causation – that defendant is free from liability under the Act.")

---

[8]Plaintiff alleges that he believed at the time that Soto was qualified to serve as a lookout and that they had both received the same lookout training. (Martinez Dep. at 61.) Moreover, Plaintiff contends that Merrill never told him that Soto was not qualified to be a lookout. (*Id.* at 64-65.)

[9]For example, Defendant's expert Wilde testified that since Defendant's employee and agent Soto was not officially qualified to be a lookout his obligation was "to decline the [lookout] assignment and refuse to occupy the track and, to the best of his ability, prevent anybody else from doing so." (Wilde Dep. at 71-73.) *See also* 49 C.F.R. § 214.313(a).

9

Defendant, as stated, avers that causation is an issue of fact that should be decided by a jury. (Def.'s Mem. at 2.) Defendant cites to *Walden* as precedent establishing that in a FELA case "causation must still be proved" to a jury. *Walden*, 975 F.2d at 364. Defendant asserts that *Walden* is instructive because in *Walden*, as here, the plaintiff claimed that there was a violation of an FRA safety regulation that established that the railroad was negligent *per se*. The lower court in *Walden* found that the violation of the regulation constituted negligence *per se*; but nevertheless allowed the issue of causation to be decided by the jury. The Seventh Circuit upheld this determination, rejecting the plaintiff's claim that causation was established as a matter of law, stating "'The decisions of [the Supreme] Court after the 1939 amendments teach that Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury.'" *Walden*, 975 F.2d at 364 (*quoting Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 510, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

The Court, however, finds that looking at the particular facts of *Walden* that Defendant's reliance on *Walden* is, respectfully, misplaced. In *Walden*, the plaintiff, a brakeman, initiated the coupling of certain engines with several boxcars by throwing a track switch and instructing the engineer by radio to begin backing the engines toward the boxcars. *Walden*, 975 F.2d at 363. As the engines began backing toward the boxcars, the plaintiff climbed aboard the rear of one of the moving engines. *Id.* Another railroad employee then took over the radio communications with the engineer, but the communication was garbled. *Id.* The employee whose radio message was garbled stepped out to where he could be seen by the engineer and gave hand signals to effect the coupling process. *Id.* The coupling occurred at a slow speed and the plaintiff (who was aboard one of the engines even

though he was not required to be aboard) was injured from the impact of the engines coupling with the boxcars. *Id.* at 363, 365.

In *Walden*, the lower court found that the defendant railroad violated an FRA radio regulation because the engineer should have immediately stopped the coupling process upon receipt of the garbled message and was prohibited from any type of movement until communication was reestablished. *Walden*, 975 F.2d at 363. However, even though there was an initial violation of the FRA radio regulation when the engineer did not stop the engines after radio communications were interrupted, the employee whose radio message was garbled got off the train and gave a hand signal. *Id.* In affirming the lower court's ruling that the issue of causation (regarding the plaintiff's injuries) was a question for the jury (even though the evidence established that the defendant railroad had violated safety regulations constituting negligence *per se* on its part), the Seventh Circuit stated:

> [I]n this case there was sufficient evidence from which a reasonable jury could have found that the *regulatory violation did not contribute in whole or part* to Walden's injury. When the facts reasonably support a conclusion for either party, the decision is exclusively for the jury to make. *Rogers*, 352 U.S. at 504, 77 S.Ct. at 447. The jury could have found the following: Walden boarded the engines during the coupling process although he was not required to do so; he knew that he should be braced during a coupling; Walden continued through the cabin door where he knew there was nothing to hold on to even though he was not required to be in his assigned seat until the train began its journey; and a normal coupling was effected. From these circumstances a reasonable jury could have found that Walden's own actions were the sole cause of his injuries and that the failure to stop the train when radio communications were interrupted did not contribute to his injury. The railroad's negligence consisted of its failure to make an immediate stop. The jury could have believed that because of Walden's unbraced position, not only that his injury upon coupling was caused by his unbraced position, but that the same injury would have occurred if the engine had been unexpectedly stopped, as the regulations required. The district court appropriately declined to withdraw the causation issue from the jury. *Walden*, 975 F.2d at 364-65 (emphasis added).

In contrast to the facts in *Walden*, however, as discussed *supra* there is no issue herein as

11

to whether Defendant's "regulatory violation did not contribute in whole or part" to Plaintiff's injury. *Walden*, 975 F.2d at 364. It did. For instance, as discussed *supra*, Defendant was required under FRA safety regulations to not permit Plaintiff to foul a track unless on-track safety was provided. According to Wilde's deposition testimony and Defendant's own report, however, there was no on-track safety provided to Plaintiff (because Soto was not qualified to serve as a lookout) while Plaintiff worked between the rails inspecting and cleaning switches at Corwith Yard. As the train which struck Plaintiff was on the track where he was working, Plaintiff would not have been struck by the train unless he was in the foul of the track. Thus, Defendant's conduct in permitting Plaintiff to foul the track when no on-track safety was provided contributed "in whole or part" to Plaintiff's injury. Additionally, Soto's violation of his obligation under FRA safety regulations (which is attributable to Defendant) requiring him "to decline the [lookout] assignment and refuse to occupy the track and, to the best of his ability, prevent anyone else from doing so" also evidences the fact that Defendant contributed "in whole or part" to Plaintiff's injury.[10] (Wilde Dep. at 71.)

Also, even if Plaintiff's own negligence in violating FRA safety regulations by failing to follow on-track safety rules of the railroad and ensuring that on-track safety was being provided before he fouled the track (49 C.F.R. § 214.313(a); 214.313(c)) contributed to his injury, Defendant is still liable. Defendant admits that a "root cause" of the accident was the fact that Soto was not qualified to serve as a lookout. Because Soto had a duty to decline the assignment even though ordered to take it by Plaintiff, Defendant's negligence played a role in producing Plaintiff's injury

---

[10] *See Traylor*, 2002 WL 31319923, at *2 ("a railroad employee may recover . . . when his employer's negligence played a role, no matter how slight, in producing the employee's injury.") *Rogers*, 352 U.S. at 507, 77 S.Ct. 443, 1 L.Ed.2d 493 (a railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury").

12

(i.e., Plaintiff's negligence was not the sole cause of his injury).

The Court also notes that Defendant's violations of federal railroad safety regulations bars its use of contributory negligence or assumption of the risk as defenses since these defenses are not applicable "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53; 45 U.S.C. § 54.[11] Accordingly, Defendant's liability cannot be offset by any negligence on the part of Plaintiff.

The Court, therefore, finds that no reasonable jury could find that Defendant's negligence *per se* in violating two safety regulations did not cause in whole or part Plaintiff's injury.

## CONCLUSION[12]

In view of the foregoing, Plaintiff's motion for partial summary judgment against Defendant

---

[11] 45 U.S.C. § 53 provides in pertinent part: "That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

45 U.S.C. § 54 provides in pertinent part: "[N]o employee shall be held to have assumed the risks of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

[12] The Plaintiff cites *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) for the proposition, set forth in *Rogers*, that the test of causation in a FELA case is "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." 352 U.S. at 506, 77 S.Ct. 443, 1 L.Ed.2d 493.

In response, Defendant asserts that *Rogers* actually stands for the proposition that the issue of causation must always be decided by a jury. In context, however, the Court finds that *Rogers* does not support Plaintiff's limited reading. (*See, e.g. Walden*, 975 F.2d at 364, 365.) In *Rogers*, the Missouri Supreme Court had reversed a jury verdict for an FELA plaintiff, the Missouri court finding as a matter of law that Plaintiff's conduct had been the sole cause of the plaintiff's mishap. Under this factual scenario, and given the particular case facts (including evidence of the employer's negligence), the Supreme Court held that the issue of causation in *Rogers* was properly one for the jury.

as to the issue of liability is granted.

ENTER:

*[signature: Ian H. Levin]*

IAN H. LEVIN
United States Magistrate Judge

Dated: August 19, 2003